**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **MELISSA AGWATA,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 4:23-cv-586** |
| | § | |
| **TARRANT COUNTY HOSPITAL** | § | |
| **DISTRICT D/B/A JPS HEALTH** | § | |
| **NETWORK,** | § | |
| **Defendant.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Melissa Agwata, hereinafter called Plaintiff, complaining of and about

JPS, hereinafter called Defendant, and for cause of action shows unto the Court the following:

### PARTIES AND SERVICE

1.      Plaintiff Melissa Agwata is a citizen of the United States and the State of Texas and

resides in Tarrant County.

2.      Defendant Tarrant County Hospital District d/b/a JPS Health Network (hereinafter

referred to as "JPS") is a county hospital district with its principal place of business located in

Tarrant County, Texas. Defendant may be served with process by serving its President and Chief

Executive Officer, Mr. Robert Earley, at 1500 South Main Street, Fort Worth, Texas 76104, or

wherever he may be found.

### JURISDICTION

3.      The action arises under 42 U.S.C. Section 1983 et. seq. as hereinafter more fully

appears.

4.      This Court has supplemental jurisdiction over state law claims discussed below

under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

## NATURE OF ACTION

5.     This is an action under Title 42 U.S.C. Section 2000e et. seq. and 42 U.S.C. Section 1981 as amended by the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race, color and national origin.

## CONDITIONS PRECEDENT

6.     All conditions precedent to jurisdiction have occurred or been complied with:  a charge of discrimination was filed with the Equal Employment Opportunity Commission within three hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## FACTS

7.     Plaintiff is an African American woman who began her employment with JPS in November 2021, and began as a Patient Access Call Center Specialist on or about January 10, 2022. Plaintiff was never written up, warned, or reprimanded for any reason relating to her work performance and job duties.

8.     From the outset of Plaintiff's employment with JPS in the call center, she was subjected to repeated discrimination, retaliation and a hostile work environment as a result of JPS and its employees in the call center.

9.     The position of patient access call center specialist was originally offered to Plaintiff with a rate of pay of $20.67/hour. However, once Plaintiff accepted the offer, the pay was reduced to $16.87/hour. Plaintiff was previously making over $19.00/hr with JPS and was told if she didn't accept this new position at a lower rate of pay, she would be terminated from JPS. So

Plaintiff accepted the position and substantially lower rate of pay.

9.      Dezaray Fragg, a Caucasian call center supervisor and Plaintiff's immediate supervisor would frequently engage in racially-charged and flagrantly discriminatory animus directed at Plaintiff solely on the basis of her skin color.

10.     In March 2022, Fragg and Plaintiff's colleagues were discussing the growing population of African immigrants in America and how they smell. Hunter [last name unknown], another Caucasian co-worker stated: "Hey Dez, in two years you'll be able to smell the Creole even worse." Fragg laughingly responded with: "Just imaging what the brown ones are going to smell like." This conversation occurred in the open call center in the presence of several other employees.

11.     Another colleague, a Hispanic man referred to as "Junior" [formal name unknown] and a trainer for JPS asked Plaintiff if she was a good cook. Plaintiff stated she was not. Junior appeared surprised at Plaintiff's response. Harvey [last name unknown], a Caucasian male interjected: "Yeah, most black people can cook because that's all they do, sit home and cook. In the ghetto, that's all they do is take government money." Junior attempted to admonish Harvey for the racist commentary, however Harvey just laughed in response to the reprimand. Another colleague, Teena Meads Jones, an African American female colleague overheard the exchange and reported the incident to JPS.

12.     During an ice storm in February 2022, Plaintiff and two other employees (one Hispanic and one Caucasian) were advised by Fragg that they could stay home the following day due to an impending ice storm. When the ice storm hit the following day and Plaintiff stayed home, Fragg then issue Plaintiff a write up for not reporting to work. The Caucasian and Hispanic employees were not written up for failure to report to work despite staying home due to the weather

and road conditions.

13.     Another instance relating to harassment and discrimination revolved around Covid-19 exposure in February 2022. Upon information and belief, Fragg was carrying the virus as her child has tested positive the night before. Fragg targeted and singled out Plaintiff and ordered her to leave the premises and only return after obtaining a negative Covid result.

14.     In mid-March 2022, Meads, reported additional instances of racial discrimination directed at Plaintiff. Meads knew Plaintiff feared additional retaliation and harassment for making any further reports of the discriminatory conduct she frequently faced.

15.     Shortly after Meads' report, an interview was arranged by Susan Barnes, an administrative assistant to JPS's chief executive officer. At the meeting with Theresa Morgan, JPS's human resources director, Plaintiff informed her of all the discrimination, harassment and retaliation she experienced during her employment with JPS.

16.     In early April 2022, Plaintiff was interviewed by a "human resources consultant" named Jordan Wade. Wade advised Plaintiff he was there to investigate the hostile climate. As a result of the investigation, it was determined there was no hostile environment and Fragg was promoted.

17.     As a result of racial discrimination, harassment and retaliation endured at JPS, Plaintiff has been diagnosed with depression and advised it best for her not to return to work at JPS. Plaintiff was constructively discharged in March 2022.

## RACE, COLOR AND NATIONAL ORIGIN DISCRIMINATION

18.     Plaintiff incorporates on the preceding paragraphs herein.

19.     Title VII of the Civil Rights Act of 1964 (the "Act") makes it unlawful to discriminate against someone on the basis of race, color, national origin, sex (including pregnancy,

sexual orientation, and gender identity) or religion. The Act prohibits not only intentional discrimination, but also practices that have the effect of discriminating against individuals because of their race, color, national origin, religion, or sex.

20.     The case law is clear: a plaintiff must establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its employment decision. If the defendant articulates a legitimate nondiscriminatory reason, then, the plaintiff, in order to prevail, must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Within this general framework, the specifics to establish a prima facie case are outlined in the four-point *McDonnell* test. In *McDonnell*, the Court established a four-point test by which a plaintiff can show a prima facie case of discrimination. The plaintiff must show that: (1) the plaintiff belongs to a protected class; (2) the plaintiff was qualified for his position; (3) the plaintiff, despite being qualified, was rejected; plaintiff experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.

21.     With respect to the first requirement, Plaintiff is an African American woman, and therefore a member of a protected class. Second, Plaintiff was qualified for her position as she never received any complaints, reprimands, or write-ups concerning her job performance in the period in which she worked for JPS. However, despite the foregoing qualifications, Plaintiff received adverse employment action in the form of increased scrutiny and a wrongful write up for missing work due to inclement weather conditions. Notably, Plaintiff was written up for missing work by the person who told her to take the [missed] day off from work due to the ice storm.

22.    After Plaintiff brough her concerns about discrimination and racially-charged comments to JPS's human resources department, they were swept under the rug and one of the more pervasive actors was promoted.

23.    Further, there is a distinct pattern of JPS discriminating against African-American employees. Defendant is aware of Plaintiff's race. Defendant engaged in unlawful employment practices involving Plaintiff because of her race, color and national origin.

24.    Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions and/or privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's race, color and national origin in violation of 42 U.S.C. Section 2000e-(2)(a).

25.    Plaintiff alleges that Defendant discriminated against Plaintiff on the basis of race, color and national origin with malice or with reckless indifference to the federal-protected rights of Plaintiff.

26.    Defendant also violated Plaintiff's rights under 42 U.S.C. Section 1981.

## RETALIATION

27.    Plaintiff incorporates all preceding paragraphs herein.

28.    Title VII of the Civil Rights Act of 1964 (the "Act") prohibits retaliation against an employee who reports discrimination based on disability. It is unlawful to retaliate against applicants or employees for communicating with a supervisor or manager about employment discrimination, including harassment. Retaliation can take the form of a reprimand; giving a performance evaluation that is lower than it should be; engaging in physical or verbal abuse; increased scrutiny; and making the employee's work more difficult.

29. A plaintiff establishes a claim for retaliation when [s]he, "engaged in an activity protected by Title VII; 2) was subjected to an adverse employment action; and 3) a causal link exists between the protected activity and the adverse employment action." *Adams v. Vaughn*, No. 3:18-CV-1109-B-BT, 2019 WL 1003845, at *3 (N.D. Tex. Feb. 12, 2019)(quoting *Wright v. Chevron Philips Chem. Co.*, 734 F. App'x 931, 935 (5th Cir. 2018)(per curiam)). Protected activity includes complaining to supervisors about acts of unlawful discrimination. 42 U.S.C. §2000e-3(a); *Valdarez v. Lubbock Cty. Hosp. Dist.*, 611 Fed. Appx. 816, 820-21 (5th Cir. 2015)(finding that the plaintiff's report of sexual harassment to his supervisor was protected activity).

30. Plaintiff engaged in a Title VII protected activity when she reported the myriad instances of racial discrimination and disparate treatment to JPS's human resources department.

31. JPS and its agents, retaliated against Plaintiff in the form of increased verbal abuse, scrutiny, undue reprimands/write-ups and increasingly hostile work environment.

32. Plaintiff was improperly written up for "missing work" despite her supervisor, Fragg, advising Plaintiff to stay home due to inclement weather. Notably the two other non-black employees who were also part of the conversation and received the same instruction were not written up or otherwise reprimanded for missing work due to the ice storm.

33. A causal link exists between Plaintiff's reporting of racially-charges comments, discriminatory behavior, disparate treatment and the subsequent negative treatment she endured.

34. Plaintiff alleges that Defendant instituted a campaign of retaliation which included verbal abuse, improper disciplinary action, increased scrutiny and having co-workers document any actions by Plaintiff that could be used against her for termination or other disciplinary matters. This retaliation was and is due to Plaintiff exercising her rights by opposing discriminatory practices, filing a charge of discrimination with the Equal Employment Opportunity Commission

and testifying, assisting, or participating in an investigation or proceeding regarding an unlawful

discriminatory practice.  Plaintiff suffered damages for which Plaintiff herein sues.

## HOSTILE WORK ENVIRONMENT

35.  Plaintiff incorporates all preceding paragraphs herein as if set forth at length.

36.     Plaintiff asserts a violation of Tex. Lab. Code 21.051 under the Texas Commission

on Human Rights Act (TCHRA). The code states:

> "An employer commits an unlawful employment practice if because of race,
> color, **disability**, religion, sex, national origin, or age the employer:
>
> (1) fails or refuses to hire an individual, discharges an individual, or
> discriminates in any other manner against an individual in
> connection with compensation or the terms, conditions, or
> privileges of employment; or
>
> (2) limits, segregates, or classifies an employee or applicant for
> employment in a manner that would deprive or tend to deprive
> an individual of any employment opportunity or adversely affect
> in any other manner the status of an employee."

37.     A hostile-work-environment claim is designed to address conduct that is so severe

or pervasive that it destroys an employee's opportunity to succeed in the workplace. *Gardner*, 414

S.W.3d at 382 (citing City of Houston v. Fletcher, 166 S.W.3d 479, 489 (Tex. App. Eastland 2005,

pet. denied)).

38.     To succeed on a TCHRA claim of hostile work environment, the complained-of

conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment

and create an abusive working environment." *Waffle House, Inc.*, 313 S.W.3d at 806 (quoting

Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).

39.      Plaintiff was subject to a severe and pervasive hostile workplace as a result of the

severe and pervasive racially-charged commentary, ridicule and harassment, including but not

limited to consistent comments and remarks about her physical appearance and race; all of which

were based upon Plaintiff's race, color and/or national origin creating an objectively hostile workplace affecting the terms and conditions of his employment and designed to hinder Plaintiff's ability to perform work functions. JPS had actual knowledge of the hostile workplace Plaintiff endured when she made repeated complaints to human resources. Defendant failed to properly investigate or otherwise resolve this hostile work environment. The actions, or lack thereof, by JPS and its employees, created an abusive working environment that ultimately resulted in Plaintiff's constructive discharge.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

40.    Defendant JPS acted intentionally or recklessly.  Defendant's conduct was extreme and outrageous and proximately caused Plaintiff severe emotional distress and depression. Plaintiff suffered damages for which Plaintiff herein sues.

## NEGLIGENT HIRING, SUPERVISION, TRAINING AND RETENTION

41.    Plaintiff alleges that the conduct of Defendant constituted negligent hiring, supervision, training and retention.  Plaintiff alleges that Defendant did not properly screen, evaluate, investigate, or take any reasonable steps to determine whether Dezaray Fragg was unfit, incompetent, or a danger to third parties.  Defendant JPS knew or should have known that Dezaray Fragg was unfit and could foresee that Dezaray Fragg would come in contact with Plaintiff, creating a risk of danger to Plaintiff.  Defendant's failure to exercise reasonable care in the hiring, supervision, training and retention of Dezaray Fragg was the proximate cause of damages to Plaintiff for which Plaintiff hereby sues.

## CONSTRUCTIVE DISCHARGE

42.    JPS made the working conditions so intolerable that Plaintiff felt compelled to resign her position.  A reasonable person in the same position would have also felt compelled to

resign.  Plaintiff suffered damages for which Plaintiff herein sues.

## DAMAGES

43.     Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

a.     Actual damages;

b.     All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

c.     Back pay from the date that Plaintiff was denied equal pay for equal work and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

d.     All reasonable and necessary costs incurred in pursuit of this suit;

e.     Emotional pain;

f.     Expert fees as the Court deems appropriate;

g.     Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

h.     Inconvenience;

i.     Interest;
ii.
j.     Loss of enjoyment of life;

k.     Mental anguish in the past;

l.     Mental anguish in the future;

m.     Reasonable medical care and expenses in the past.  These expenses were incurred by Melissa Agwata and such charges are reasonable and were usual and customary charges for such services in Tarrant County, Texas;

n.     Reasonable and necessary medical care and expenses which will in all reasonable probability be incurred in the future;

o.     Loss of earning capacity which will, in all probability, be incurred in the future; and

p.      Loss of benefits.

## EXEMPLARY DAMAGES

44.      Plaintiff would further show that the acts and omissions of Defendant complained of herein were committed with malice or reckless indifference to the protected rights of the Plaintiff.  In order to punish said Defendant for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendant for exemplary damages.

## SPECIFIC RELIEF

45.      Plaintiff seeks the following specific relief which arises out of the actions and/or omissions of Defendant described hereinabove:

a.      Prohibit by injunction the Defendant from engaging in unlawful employment practices.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Melissa Agwata, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

## PLAINTIFF HEREBY DEMANDS TRIAL BY JURY

Respectfully submitted,

/s/ Ali Crocker Russell
Ali Crocker Russell

State Bar No. 24098868
ali@cralawfirm.com
CROCKER RUSSELL & ASSOCIATES
2401 Callender Road, Suite 103
Mansfield, Texas 76063
Tel: (817) 482-6570
Fax: (682) 232-1850

**ATTORNEY FOR PLAINTIFF**